1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11  CARY A. JARDIN,                    )   No. 11-CV-87-IEG(WVG)
                                       )
12                    Plaintiff,       )   **ORDER GRANTING IN PART AND**
                                       )   **DENYING IN PART PLAINTIFF'S**
13  v.                                 )   **MOTION TO COMPEL**
                                       )
14  DATALLEGRO, INC., *et al.*,        )   [DOC. NO. 1]
                                       )
15                    Defendants.      )
                                       )
16  _____   )

17       This case appeared on the Court's docket when the United

18  States District Court for the Western District of Washington

19  transferred Plaintiff's motion to compel Microsoft, Inc., to respond

20  to Plaintiff's requests for document production in <u>Jardin v.</u>

21  <u>DATAllegro, Inc., *et al.*</u>, S.D. Cal. No. 08-CV-1462-IEG(WVG) ("2008

22  Case").  The only issue for resolution in the instant case remains

23  Plaintiff's motion to compel, which the Court finds suitable for

24  decision without oral argument. S.D. Cal. Civ. L. R. 7.1.  For the

25  reasons stated below, Plaintiff's motion is GRANTED IN PART and

26  DENIED IN PART.

27  / / /

28  / / /

# I.  <u>BACKGROUND</u>

Before Plaintiff's claims were summarily adjudicated in Defendants' favor, he alleged patent infringement against Defendants Frost and DATAllegro, Inc., which has been purchased by non-party Microsoft, Inc.  On September 30, 2010, Plaintiff served Microsoft with a subpoena *duces tecum* that sought various categories of documents related to Microsoft's purchase of DATAllegro.  Although it appears that Microsoft initially complied by producing some documents, the company later refused to produce other documents it found.  The instant motion to compel followed on December 20, 2010, in Washington.

On January 14, 2011, the fully-briefed motion was transferred to this Court after Plaintiff and Microsoft jointly moved for the transfer.  (Doc. Nos. 11-13.)[1]  At that time, Microsoft "expressly consent[ed] to the transfer for the limited purpose of resolving the pending discovery dispute," (Doc. No. 11 at 2:3-4), and "agree[d] to be bound by, and comply with, any order issued from [this Court]," (<u>id.</u> at 2:19-3:1).

On February 4, 2011, this matter was low-numbered to the 2008 Case.  On February 18, 2011, Defendants asked for a stay of discovery in the 2008 Case pending the outcome of a motion to dismiss that was pending in another related case, <u>Jardin v. DATAllegro, Inc. *et al*.</u>, S.D. Cal. No. 10-CV-2552-IEG(WVG) ("2010 Case").  (Doc. No. 155.)

On March 23, 2011, the Court stayed discovery after hearing arguments and deferred ruling on the present motion until the stay

---

[1]  Page references to documents on the Court's docket are to the CM/ECF pagination, not the document's native pagination.

1   lifted.  (Doc. No. 188.)  On April 12, 2011, the stayed lifted after

2   Judge Gonzalez ruled on Defendants' motion to dismiss in the 2010

3   Case.  (Doc. No. 205.)

## II.  LEGAL STANDARD

5          A motion to compel is appropriate when a party fails to

6   produce relevant, non-privileged documents that a party has

7   subpoenaed.  Fed. R. Civ. P. 45(c)(2)(B)(i).  The party seeking to

8   compel compliance bears the burden of establishing that its document

9   requests satisfy the relevancy requirements of Rule 26(b)(1).[2/]  See

10  Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995)

11  (finding that a relevant matter is "any matter that bears on, or

12  that reasonably could lead to other matters that could bear on, any

13  issue that is or may be in the case.").  Moreover, the scope of

14  federal discovery is broad.  See Herbert v. Lando, 441 U.S. 153, 177

15  (1979); Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995)

16  ("[W]ide access to relevant facts serves the integrity and fairness

17  of the judicial process by promoting the search for truth.").  The

18  broad scope of permissible discovery encompasses "any matter that

19  bears on, or that reasonably could lead to other matter that could

20  bear on, any issue that is or may be in the case." Doe v. Archdio-

21  cese of Portland, 717 F. Supp. 2d 1120, 1126 (D. Or. 2010) (citing

22  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

---

[2/]    Rule 26's use of "relevant to the subject matter" is interpreted broadly, and includes information that might "reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement." Moe v. Sys. Transp., Inc., 270 F.R.D. 613, 618 (D. Mont. 2010).  Even if it would not be admissible at trial, relevant information may be discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Hearsay or nonhearsay information relating to the credibility of witnesses or other evidence in the case may be relevant to the subject matter of the action.  Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998); Ragge v. MCA/Universal Studios, 165 F.R.D. 601, 603–04 (C.D. Cal. 1995).

1    Discovery is not limited to the merits of a case, "for a variety of

2    fact-oriented issues may arise during litigation that are not

3    related to the merits." Id.   Courts have "wide latitude in

4    controlling discovery, and [their] rulings will not be overturned in

5    the absence of a clear abuse of discretion." Volk v. D.A. Davidson

6    & Co., 816 F.2d 1406, 1416-17 (9th Cir. 1987).

7        After the moving party makes the requisite showing of

8    relevance, the party opposing the discovery has the burden of

9    showing that it should be prohibited, as well as the burden of

10   clarifying, explaining, and supporting its objections. DIRECTV,

11   Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing

12   Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

13                        **III.   DISCUSSION**

14   **A.     Relevancy Predicated on Plaintiff's Former Claims**

15       Plaintiff's subpoena contains fourteen document categories.

16   Microsoft objected on the ground, *inter alia*, that the documents are

17   not relevant.   Plaintiff's current proffer of relevancy relies

18   heavily on the following argument:  "[T]he documents identified by

19   Microsoft relate to its evaluation of the accused technology and, at

20   a minimum, are relevant to Jardin's proof of infringement and value

21   of the accused technology.   The other requested documents are

22   likewise relevant to Jardin's damages theories, infringement

23   theories and defenses." (Doc. No. 1 at 4:17-20.)   However, this

24   argument is no longer valid in light of recent events in the 2008

25   Case.

26       On April 1, 2011, Judge Gonzalez granted *in toto* Defendants'

27   motion for summary judgment of non-infringement. (Doc. No. 191.)

28   On April 11, 2011, Judge Gonzalez denied Plaintiff's motion for

1  summary judgment of infringement. (Doc. No. 197.) These orders

2  resulted in the complete disposition of Plaintiff's case. As a

3  result, any relevancy arguments that relate in any way to Plain-

4  tiff's former claims (*e.g.*, to establish damages and to prove

5  Defendants' infringement of his technology) are now moot.

6      The foregoing notwithstanding, this case lives on, as

7  Defendants currently have two counterclaims for declaratory relief

8  pending against Plaintiff. (See Doc. Nos. 44, 45.) As explained

9  below, Defendants seek to invalidate various claims in Plaintiff's

10 patent ("2008 Patent") and render it unenforceable. As a result,

11 only the relevancy arguments that bear on the counterclaims remain

12 at issue.

13 **B.    Plaintiff's Conclusory Statements Are Unpersuasive**

14      Although the main thrust of Plaintiff's motion is Microsoft's

15 documents' relevancy to infringement and damages, Plaintiff inserts,

16 seemingly as an afterthought, the following sentence at the end of

17 each argument section: "[S]econdary considerations of non-obvious-

18 ness regarding the [2008 Patent], including long-felt need, failure

19 of others, and commercial success of the accused products."

20      Microsoft objects that these passages are conclusory and

21 unhelpful: "This mere listing of unspecified factors is insuffi-

22 cient to meet Plaintiff's burden of proving the relevance of his

23 requests." (Doc. No. 8 at 9:1-2.) Microsoft continues:

24          For instance, what exactly are Plaintiff's equita-
        ble defenses resulting from Defendants' infringement"
25      (he never identifies them) and how could they possibly
        relate to documents Microsoft might have in its posses-
26      sion (he does not say)? And what do Microsoft's
        documents have to do with the validity of Plaintiff's
27      patent? Moreover, the shotgun approach is not helpful
        to either Microsoft or the Court in determining whether
28      the expense of conducting full custodial searches is
        warranted, and is precisely why Microsoft could not

1    reach agreement with Plaintiff.  Plaintiff, for the
     most part, makes no effort to align the requested
2    materials with the alleged "defenses" he has not even
     identified or explain how exactly they would be rele-
3    vant.

4    (Id. at ll. 2-10.)  For the most part, the Court agrees with

5    Microsoft's assessment.  However, the Court notes that Microsoft's

6    representation that a "full custodial search" is necessary here is

7    inaccurate since it appears that Plaintiff has narrowed his requests

8    to documents that the so-called "Deal Team" produced or possessed.

9    Thus, Plaintiff's requests, as narrowed during meet and confer

10   efforts, no longer ask Microsoft to search the records of all of its

11   employees.  In any event, Defendants are correct that Plaintiff's

12   cursory "shotgun" approach does not flesh out how the subpoenaed

13   documents are relevant to his "secondary considerations of non-

14   obviousness."  Plaintiff's Reply does not flesh out this argument.

15   Without Plaintiff's adherence to the basic tenet of persuasive

16   writing (i.e., "show me, don't tell me"), the Court is left to its

17   own devices to construct an argument that supports the documents'

18   relevance.  The Court declines to do so.  As a result, these

19   conclusory statements do not satisfy his initial burden to show the

20   relevancy of the documents he seeks.

21   **C.    <u>Frost's Reduction of the Invention to Practice</u>**

22        Plaintiff's motion contains a final argument, that documents

23   requests 11, 13, and 14[3/] are relevant because they bear on Defen-

24   dants' counterclaim allegations that the 2008 Patent is invalid and

25   _____

26   [3/]    Request 11 asks for "[a]ll Documents that were transferred by [law
          firm, McDermott, Will & Emory, LLP] related to DATAllegro,
          including, but not limited to, any documents transferred by MWE to
27        Microsoft employee Rachel Frodsham."  Request 13 asks for "[a]ll
          Documents Concerning the prosecution of the following U.S.P.T.O.
          applications:  20050187977, 20060218190, and 20070299812."  Request
28        14 asks for "[a]ll Documents Concerning the following application
          numbers filed with the U.S.P.T.O.:  60/546,428;  11/059,510;
          60/665,357; and 11/390,247."

1    unenforceable, and that Stuart Frost invented the disputed technol-

2    ogy before Plaintiff did.  (Doc. No. 1 at 14:3-4, 15:7-8 ("Frost

3    claims to have invented what is claimed by the [2008 Patent] **before**

4    Jardin did, thereby rendering the [2008 Patent] invalid . . . .")

5    (emphasis in original).)   Specifically, Jardin posits that the

6    documents "should include notes or other evidence regarding when

7    Frost conceived and reduced to practice Jardin's claimed inven-

8    tions."  (Id. at 14:5-6, 15:9-10.)   The Court concludes that

9    document requests 11, 13, and 14 reasonably bear on issues raised by

10   Defendants' counterclaims.

11        In the summary judgment motion of invalidity, Defendants

12   argue that filing timelines establish that the 2008 Patent antici-

13   pates Frost's patent ("2010 Patent"), and the 2008 Patent is invalid

14   as a result.  (Doc. No. 179-1 at 7-9.)   Defendants claim the 2010

15   Patent is prior art to the 2008 Patent.  However, even if this is

16   true, application filing dates are not necessarily conclusive or

17   dispositive, as the United States currently embraces a first-to-

18   invent, not a first-to-file, patent system.  Although Congress may

19   change this soon, the law as it stands now provides that "[a] person

20   shall be entitled to a patent unless":

21        [B]efore such person's invention thereof, the invention
          was made in this country by another inventor who had not
22        abandoned, suppressed, or concealed it.  In determining
          priority of invention under this subsection, there shall
23        be considered not only the respective dates of conception
          and reduction to practice of the invention, but also the
24        reasonable diligence of one who was first to conceive and
          last to reduce to practice, from a time prior to concep-
25        tion by the other.

26   35 U.S.C. § 102(g)(2).  An inventor may "swear back" to establish

27   his inventorship up to one year prior to his application filing

28   date.  See 35 U.S.C. § 102(b).  Importantly, "prior conception of

1    the invention by another does not defeat one's right.  No possible

2    barrier is created by § 102(g) unless another has either actually

3    reduced the invention to practice or has constructively reduced it

4    to practice by filing a patent application."  <u>In re Katz</u>, 687 F.2d

5    450, 454 (C.C.P.A. 1982).

6          In this case, timing matters.  The 2008 Patent theoretically

7    could be sworn back to March 23, 2003.  However, since Frost has

8    been granted the 2010 Patent, Microsoft's records may contain

9    relevant information regarding Frosts reducing the invention at

10   issue to practice.

11         Because Section 102(g) does not invalidate the 2008 Patent

12   unless Frost "actually reduced the invention to practice," a factual

13   dispute about the timing of Frost's and Plaintiff's reduction of the

14   invention to practice could exist.  Plaintiff's opposition to the

15   summary judgment motion advances this argument.  (<u>See</u> Doc. No. 193

16   at 10-11.)  Plaintiff's motion to compel does the same.  (Doc. No.

17   1 at 14:3-7, 15:6-10.)  The Court finds that some documents in

18   Microsoft's possession may be relevant to the extent that they

19   potentially bear on this issue.  As a result, the Court finds that

20   Plaintiff has satisfied his burden of showing the relevance of these

21   limited document requests.

22         Finally, Microsoft avers that it has "produced the file

23   histories of Mr. Frost's patents," lists Bates stamp numbers of

24   responsive documents it has apparently produced, and states that it

25   "is unclear what additional information Plaintiff seeks."  (Doc. No.

26   8 at 14:12-17, 15:9-10.)  This weighs against the claimed burden

27   Microsoft will suffer, and the Court finds that the company will not

28   suffer undue burden as a result of this limited Order.  Of course,

1    Microsoft need not produce duplicate documents.  However, to the

2    extent that Microsoft's search reveals un-produced, responsive

3    documents (*e.g.*, among the McDermott, Will & Emory files), Microsoft

4    shall produce those additional documents.  If Microsoft's good-faith

5    search genuinely fails to uncover additional responsive documents,

6    then the company obviously has nothing left to produce, shall inform

7    Plaintiff, and file with the Court a declaration or other paper that

8    certifies as much.

9                    **IV.   CONCLUSION**

10        Based on the foregoing, the Court DENIES IN PART Plaintiff's

11   motion as to document requests 1-10 and 12 and GRANTS IN PART

12   Plaintiff's motion as to requests 11, 13, and 14.   However,

13   Microsoft shall not be compelled to produce the documents until

14   Judge Gonzalez's ruling on Defendants' summary judgment motion of

15   invalidity.  In the meantime, Microsoft shall diligently search for

16   responsive documents and prepare them for production.   If Judge

17   Gonzalez denies the motion, Microsoft shall produce the documents

18   within four (4) court days of Judge Gonzalez's order.[4]

19   IT IS SO ORDERED.

20   DATED:  May 9, 2011

21

22                              _____

23                              Hon. William V. Gallo
                                U.S. Magistrate Judge

24

25

26

27

28

---

[4]      Of course, if Judge Gonzalez grants Plaintiff's pending motion to
       dismiss, the issue is moot and Microsoft need not produce anything.